UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES BROWN, et al., ) | |
| ) | Case No. 1:06-CV-00026 |
| Plaintiffs, ) | |
| ) | Judge Ann Aldrich |
| v. ) | |
| ) | |
| TELEDYNE CONTINENTAL MOTORS, INC., ) | |
| ) | |
| Defendant. ) | MEMORANDUM AND ORDER |
| ) | |
| ) | |

Before the court are eight motions in limine filed by defendant Teledyne Continental Motors, Inc. ("Teledyne") concerning: (1) admission of evidence of alleged lost profits from companies that employed plaintiff James Brown ("Brown") at the time of the accident ("Motion 1") [Docket No. 42]; (2) the report of the National Transportation Safety Board ("NTSB") regarding the accident ("Motion 2") [Docket No. 43]; (3) evidence of warranty claims filed against Teledyne concerning parts similar to those at issue in this case ("Motion 3") [Docket No. 44]; (4) expert testimony concerning the value of lost domestic services suffered by plaintiff Teresa Brown as a result of Brown's injuries ("Motion 4") [Docket No. 45]; (5) testimony of plaintiffs' (the "Browns") expert Richard Harkness ("Harkness") on the cause of the accident ("Motion 5") [Docket No. 46]; (6) testimony from three individuals employed by the federal government who participated in the NTSB investigation ("Motion 6") [Docket No. 47]; (7) the ability of plaintiffs' counsel to suggest a specific amount in pain and suffering damages ("Motion 7") [Docket No. 59]; and (8) testimony of plaintiffs' expert Donald Knutson ("Knutson"), an accident reconstruction expert ("Motion 8") [Docket No. 60]. Teledyne has also filed a motion requesting a final pre-trial conference [Docket No. 73]. For the following reasons, the court grants

Motions 1, 3, 4, 5, grants in part and denies in part Motions 2, 6, 7 and 8 as described below, and grants the motion for a final pre-trial conference.

## I. Background

In September 2001, while attempting to take off from Medina Municipal Airport, an alleged engine failure caused Brown to crash-land, sustaining severe injuries. The Browns allege that the engine failure which caused the crash was caused by the failure of an engine component made by Teledyne. Specifically, the Browns claim that the engine component contained a manufacturing defect that caused the engine failure and the resulting crash. In its November 9, 2006 memorandum and order [Docket No. 48], the court entered summary judgment for Teledyne on its unopposed motions for summary judgment on the Browns' other claims, and granted Teledyne's motion in limine concerning profits from RentEquip, Inc. and their use as evidence at trial. Currently before the court are a number of motions in limine seeking to further limit the evidence at trial.

## II. Discussion

### A. Expert Testimony – Motions 4, 5 and 8

With respect to expert testimony, the Supreme Court has held that scientific evidence proffered by an expert must be "relevant to the task at hand" and must rest "on a reliable foundation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). The Supreme Court subsequently affirmed that the principles announced in *Daubert* apply generally to all expert testimony admissible under Rule 702 of the Federal Rules of Evidence. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). The maxims set forth in *Daubert* and *Kumho Tire* have since been incorporated into Rule 702, which now permits qualified experts to proffer their expert opinions where (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has

applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. *Daubert* and its progeny have placed this court in the role of "gatekeeper," charging this court with evaluating the relevance and reliability of proffered expert testimony with heightened care. In discharging that role, the court possesses broad discretion to make admissibility determinations. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir.2000).

   *1. Motion 4 – Dr. Harvey Rosen*

In Motion 4, Teledyne seeks to exclude testimony from Dr. Harvey Rosen ("Rosen") concerning the value of domestic services provided by Brown to Teresa Brown that has been lost as a result of Brown's injuries, which are the damages alleged in Teresa Brown's loss of consortium claim. The Browns intend to have Rosen testify to three components used to calculate that value: (1) the amount of service provided by Brown to Teresa Brown each week; (2) the value of each hour of service; and (3) the present value of Brown's domestic service for the remainder of his life expectancy. The Browns concede that the estimate used by Rosen of 10 hours of domestic service each week is an assumption not based on any particular evidence gathered from the Browns, but argue that the Browns themselves will be able to provide that evidence at trial.

However, Rosen's proposed testimony suffers from a more significant defect. Rosen uses a figure of $12 per hour to establish the value of domestic services. The statistical information underlying that estimate was not provided to Teledyne along with Rosen's expert report in accordance with Rule 26 of the Federal Rules of Civil Procedure. The fact that the Browns have attached an affidavit from Rosen naming evidence, without actually providing it, fails to meet the strict obligations of Rule 26. Therefore, the court must assess Rosen's proposed expert testimony without considering the affidavit as part of the facts or data he would have considered. On that basis, Rosen's $12 per hour figure is

justified by no facts or data, and is not the product of anything resembling a reliable method.

Under Ohio law, expert testimony may be admitted to help a jury calculate damages for a loss of consortium claim. *Stelma v. Juguilon*, 597 N.E.2d 523, 532 (Ohio Ct. App. 1992). However, that expert must still pass muster under *Daubert* and its progeny in order to appear before a jury in the first place. Rosen's testimony on the proposed hourly rate clearly does not. Since Rosen is not being proffered to establish the amount of domestic services, and since the jury needs no expert to calculate the present value of future damages, Rosen's testimony would not assist the jury. *Sahrbacker v. Lucerne Prods., Inc.*, 556 N.E.2d 497, 498 (Ohio 1990). In short, because Rosen's proffered testimony does not meet the minimum standards of reliability required by *Daubert* and its progeny, the court grants Teledyne's motion in limine and excludes Rosen's testimony from trial.

### 2. *Motion 5 – Richard Harkness*

As proffered by the Browns, Harkness is an expert witness and intends to testify to at least four opinions at trial: (1) that the Teledyne part in question was damaged when it left Teledyne's control; (2) that the damage was caused by metal fatigue; (3) that the damage would have been discovered by a "die penetrant" test; and (4) that the part separated from the engine on take-off, causing the plane crash. However, the Browns concede that Harkness never performed any actual tests on the part in question, and that Harkness is not a qualified metallurgist. Harkness also has no experience performing a "die penetrant" test, and did not inspect the engine of Brown's plane to determine the cause of the engine failure. With respect to the second and fourth opinions, Harkness simply adopts the conclusions of the Federal Aviation Administration ("FAA") investigators and metallurgist. On the first opinion, Harkness admits to using rough estimates as to the weight of the part in question, instead of weighing it, estimating the stress placed on the part, instead of testing it, and conducting little or no actual testing

to support his conclusions. The Browns concede Harkness' lack of experience with the "die penetrant" test, and his lack of qualifications to determine the engine failure and the cause of the damage to the part, but attempt to argue that Harkness is entitled to rely upon the FAA investigators and metallurgist in forming his opinion under Rule 702.

While that might be the case, Harkness must himself be qualified to render any opinions he would testify to in court, or he would simply be parroting the opinions of others. Harkness is not qualified to comment on the cause of the damage, because he is admittedly not a metallurgist. He is not qualified to comment on the cause of the engine failure, because he never examined the engine and has no experience in aircraft accident investigations or aircraft engine failure investigations. Finally, given his lack of testing or substantive analysis, Harkness' first and third opinions lack the reliability and basis in analysis and factual data required by *Daubert*. Therefore, the court grants Teledyne's motion in limine and excludes Harkness' testimony from trial.

   *3.     Motion 8 – Donald Knutson*

The Browns proffer the testimony of Knutson, an accident reconstruction expert, on a number of issues. Teledyne, citing *Daubert*, requests that certain of Knutson's opinions be excluded: (1) that certain damage to the part indicates that it was defective prior to its installation in Brown's plane; (2) that stress from installation did not cause the damage; (3) that use of the "die penetrant" test would have revealed the damage prior to Brown's crash; (4) that Teledyne's manufacturing and inspection processes should have included the "die penetrant" test; and (5) that Rock Aviation Services ("RAS"), which installed the part, did not contribute to the crash. Knutson admits that he is not a metallurgist or a materials expert, and that he simply adopts the conclusions reached by the FAA's metallurgist. For that reason, the court must bar Knutson from offering testimony on the first and second opinions to the jury.

Knutson does have experience performing the "die penetrant" test to discover damage to components, so the court will allow his testimony on that subject. Teledyne's objections in that regard are better suited as topics for cross-examination. Knutson may also testify to his opinion that if Teledyne had used a "die penetrant" test, it would have discovered metal fatigue if there had been any present. Finally, because Knutson never performed testing of any kind to justify his opinion that RAS did not contribute to causing the plane crash, the court excludes that testimony as well. The court grants Teledyne's motion in limine in part, and excludes any testimony by Knutson concerning the nature of the metal fatigue/failure, the presence of significance of chromium on the part in question, whether the metal failure was caused by fatigue or stress and from which sources, whether metal fatigue or failure existed at the time the part left Teledyne's control, and the effect of RAS's conduct on the accident. Knutson may testify about "die penetrant" tests generally, and whether such a test would have revealed metal fatigue or failure, if such fatigue or failure existed at the time the part left Teledyne's control.

### B. Government Reports and Witnesses – Motions 2 and 6

The Browns have also indicated their intent to introduce portions of the NTSB report on the plane crash, as well as calling certain FAA employees to testify. Teledyne has filed motions in limine to block introduction of the report. Federal law prohibits NTSB reports from being admitted into evidence or used in a civil action arising out of the incident described in the report. 49 U.S.C. § 1154(b). However, that bar only applies to the official conclusions of the NTSB, not to the factual reports of individual investigators. 49 C.F.R. § 835.2; *Correll v. Consol. Rail Corp.*, 266 F.Supp.2d 711, 714 (N.D. Ohio 2003). Here, the Browns seek only the admission of factual reports by William Takala and the report by metallurgist Joe Epperson. Those sections of the NTSB report, under the definition in 49 C.F.R. § 835.2, do not fall within the bar of 49 U.S.C. § 1154(b). The court therefore grants

Teledyne's motion in limine in part, and excludes all but pages 14, 15 and 19 through 27 of the 33-page report attached as Exhibit A to Motion 2.

Teledyne has also moved to exclude the testimony of three federal employees at trial. All of the parties agree that Donald Rhodes and William Takala are employees of the U.S. Department of Transportation ("USDOT") and that Joe Epperson is an NTSB employee. As this matter is a "legal proceeding[] between private litigants," 49 C.F.R. § 9.9(d) provides that "[a]n employee [of USDOT] shall not provide testimony at a trial or hearing." The testimony of Mr. Rhodes and Mr. Takala, pursuant to 49 C.F.R. § 9.9(d), "shall be limited to a single deposition, affidavit, or set of interrogatories." Mr. Epperson, as an NTSB employee, is "not permitted to appear and testify in court" in this action. 49 C.F.R. § 835.5(a). The court therefore excludes Mr. Rhodes, Mr. Takala and Mr. Epperson from offering live testimony at trial, and bars all parties from calling any of those three individuals as a live witness for any purpose. However, as all three individuals have been deposed, their deposition testimony may be offered into the record, subject to the other limitations of 49 C.F.R. § 9.9 for Mr. Rhodes and Mr. Takala and 49 C.F.R. § 835.3 for Mr. Epperson.

49 C.F.R. § 9.9(c) provides that an "employee shall not testify as an expert or opinion witness with regard to any matter arising out of the employee's official duties or the functions of [USDOT]." Similarly, 49 C.F.R. § 835.3(b) provides that NTSB employees "shall not give any expert or opinion testimony." Teledyne argues that all of the deposition testimony of Mr. Rhodes, Mr. Takala and Mr. Epperson constitutes "expert or opinion testimony" barred by 49 C.F.R. §9.9(c) and 49 C.F.R. § 835.3(b). The Browns respond by claiming that none of these individuals offered such testimony, because an attorney from USDOT was present at the depositions of Mr. Rhodes and Mr. Takala and instructed those witnesses not to answer any questions if the testimony would have violated § 9.9(c),

while Mr. Epperson declined to answer certain questions, citing 49 C.F.R. § 835.3(b). The Browns also claim that these three individuals' testimony is factual, not "expert or opinion," despite its technical nature.

While the USDOT attorney might have instructed Mr. Rhodes and Mr. Takala not to answer certain questions because the answers would have constituted "expert or opinion testimony," the court is not bound by that attorney's determinations. Nor is it bound by Mr. Epperson's determination of what might be "expert or opinion testimony" during his own deposition. Therefore, the court has determined that the following portions of the deposition transcripts of Mr. Rhodes, Mr. Takala and Mr. Epperson must be redacted as "expert or opinion testimony":[1]

> Deposition of Donald Rhodes: 19:22-20:4; 23:17-24:5; 25:7-16; 29:16-18; 30:16-25.
>
> Deposition of William Takala: 17:9-15; 48:10-23; 57:4-58:14; 63:3-12; 64:25-66:10.
>
> Deposition of Joe Epperson: 19:23-20:1; 21:22-26:25; 29:11-30:12; 31:19-20; 32:5-17; 33:12-14; 33:21-34:13; 36:6-37:10; 37:23-38:21; 52:7-22; 60:10-61:17; 62:1-23; 63:9-14; 64:4-65:6; 66:10-25; 68:3-19; 70:15-23.

Objections to the court's designated redactions may be raised at the final pre-trial conference. The court grants Motion 6 in part.

### C. Damages – Motions 1 and 7

In its November 9, 2006 memorandum and order [Docket No. 48], the court barred the introduction of any evidence about the lost profits of Brown's employer because such damages were irrelevant and unavailable as a matter of law in this case. For the reasons stated in that memorandum

---

[1] The page and line listings are in the following format: 1:3-4 refers to page 1, lines 3 through 4; 1:3-2:6 refers to page 1, line 3 through page 2, line 6.

and order, the court grants Motion 1 and excludes all evidence relating to alleged lost profits of RentEquip, Inc., Westline Construction, Inc., Spectrum Rental Management, Inc., Spectrum Truck Rental, Inc. and Tiara, Inc. from trial.

In Motion 7, Teledyne also seeks to bar the Browns' counsel from suggesting a specific amount of damages for Brown's pain and suffering. This matter is within the court's broad discretion. *Padgett v. S. Ry. Co.*, 396 F.2d 303, 308-09 (6th Cir. 1968). Despite the potential for prejudice outlined by Teledyne, the court finds that a cautionary jury instruction is sufficient to safeguard the jury from that prejudice. The court therefore grants Motion 7 in part, and shall issue the cautionary jury instruction that the court always issues in civil jury trials – that the statements and arguments of counsel are not evidence. If Teledyne desires additional instructions or more specific instructions on this matter, it may raise the issue when the court hears the parties' objections to the jury instructions.

### D. Warranty Claim Evidence – Motion 3

The final motion in limine before the court concerns evidence of warranty claims made by Teledyne customers concerning the same general type of damage to the same part at issue in this case. Such evidence is admissible only if the offering party establishes that the other incidents are "substantially similar." *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 102 (6th Cir. 1989) (citation omitted). "Substantial similarity means that the accidents must have occurred under similar circumstances or share the same cause," and the burden is on the Browns to establish that fact. *Id.* (citations omitted).

Here, none of the warranty claims specify a personal injury of any kind, whether the cracks in the metal were in the same location as the cracks in the part at issue in this case, or the cause of the cracks. The only evidence of similarity cited by the Browns is that the warranty claims concern parts

with roughly the same amount of usage time as the part in this case. That, however, falls far short of establishing that the warranty claims concern events that are "substantially similar" to the events of this case. Therefore, the court grants Motion 3 and excludes all evidence of the warranty claims from trial.

### III.     Conclusion

For the foregoing reasons, the court grants Motion 1 [Docket No. 42], grants in part and denies in part Motion 2 [Docket No. 43], grants Motion 3 [Docket No. 44], grants Motion 4 [Docket No. 45], grants Motion 5 [Docket No. 46], grants in part and denies in part Motion 6 [Docket No. 47], grants in part and denies in part Motion 7 [Docket No. 59], and grants in part and denies in part Motion 8 [Docket No. 60] as described above. The court also grants Teledyne's motion for a final pre-trial conference [Docket No. 73].

Trial is still scheduled to begin on Monday, March 26, 2007, in Courtroom 17B, Carl B. Stokes U.S. Courthouse, 801 West Superior Avenue, Cleveland, Ohio 44113. However, the court resets the starting time to 1:30 p.m. on March 26. The final pre-trial conference is set for 10:30 a.m. on Tuesday, March 20, 2007, Suite 17B, Carl B. Stokes U.S. Courthouse.

IT IS SO ORDERED.

    /s/Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: March 15, 2007**